# CSS.CUSTOMER SERVICE SUPERVISOR Share

## Description

*Exhibit(14)*
*CSS Description*

POSITION TITLE: CSS - Customer Service Supervisor

Responsible for the supervision, direction and monitoring of personnel to ensure our customers are receiving the best possible service.
- Responsible to ensure personnel comply with established rules and regulations.
- Plan and coordinate operational activities and communicate with other station personnel, other departments and vendors as required.
- Responsible to ensure the protection and security of customers and company property at all times.
- Ensure quality service is provided in all areas of responsibility including facilities, customer handling, equipment and appearance of personnel.
- Responsible for maintaining station records, completing reports and any other administrative support required by Station Management

## Qualifications

- High school diploma or GED.
- Three years of experience in an airport and /or customer service environment.
- Internal employees may not be on an attendance level.
- Must have at least an average rating on the most recent performance evaluation.
- Must remain in the position of one year.
- May not be on a disciplinary level.

**US Airways is an Equal Opportunity Employer/Minorities/Females/Disabled/Veterans**

### U·S AIRWAYS

Department:

Location:
US-NH-Manchester
Posted Date:
3/3/2015 00:00:00
Expiration Date:
Until filled
Requisition ID:
244123

Work Schedule
Full-Time
Apply Now

( Logout )( Menu )( Mail (35) )

w⊕rkbrain

"⊰ SHEIDA HUKMAN

Inbox My Forms

**FROM**   U086411

**DATE**   Jun 13, 3:17 PM

**To**   U048688,U011601,U055170,U050967,U099975,U01051:

**CC**

**SUBJECT**   PHL OPEN CSS POSITIONS AVAILABLE

TO ALL PASSENGER SERIVCE EMPLOYEES:

WE CURRENLTY HAVE OPEN CSS POSITIONS AVAILABLE THAT WILL BE EFFECTIVE JULY 30, 2012. THE TIMELINE FOR SUBMITTING PAPERWORK FOR THIS POSITION IS LISTED BELOW. PLEASE COME TO STATION MOVEMENT TO OBTAIN A CSS PANEL REQUEST PACKET. A STATION SUPPORT REPRESENTATIVE WILL BE AVAILABLE FOR ANY QUESTIONS

DEADLINE FOR SUBMITTING CSS PANEL PACKET PAPERWORK - FRIDAY JUNE 22ND AT 5PM

INTERVIEWS WILL BE CONDUCTED THE WEEK OF JULY 2ND AT PHL AIRPORT
THE POSITION WILL BE EFFECTIVE MONDAY, JULY 30TH.

Exhibit (15)
CSS Open Position

( DELETE )        ( FORWARD )        ( REPLY )        ( Close )

http://wbrsnp03.usairways.com/...

# WEDNESDAY   JULY 25, 2012

| first flight | RITA GRAY | 0430--1000 | last fight |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| 3279 | RICK MALONE | 0600--1430---1 | 3184 |
| 1885 | IVANKA HRYCKOWIAN | 0430--1000---2 | |
| 1612 | TIANA CAMPBELL | 0530--1030---3 | |
| 1289 | ALBERTO POBLANO | 0600--1430---4 | 3377 |

| first flight | KEVIN BAILEY | 0430--1300 | last fight |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| 1112 | T FULTON (also 1731) | 0600--1430---17 | 970 |
| 1612 | TONI STEVENSON | 0600--1430---18 | 1634 |
| 255 | CAROL LAWRENCE | 0530--1030---20 | |
| 657 | CAROLYN DOWNS | 0600--1430---22 | 1827 |

| first flight | EDWARD KLEIN | 0530--1400 | last fight |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| 153 | JACKIE BUTTERLY | 0600--1430---5 | 3287 |
| 3279 | SHARON LINDSAY | 0600--1430---6 | 3123 |
| 407 | B MILLWOOD (also 1273) | 0600--1430---7 | 1827 |
| 1881 | S RANDALL (also 1839) | 0600--1430---8 | 3189 |

| first flight | AUDREY PINKERTON | 0530--1400 | last fight |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| 3362 | ANNIE CASE | 0600--1430---19 | 970 |
| 1267 | DENNY DOMBROSKI | 0600--1430---21 | 1634 |
| 1112 | DAVE CLARK | 0600--1430---24 | 1994 |
| 657 | C MASSARO (also 1020) | 0600--1430---26 | 1028 |

| first flight | WALLY BOHL | 0530--1400 | last fight |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| 1267 | N GRAY (also 1241) | 0600--1430---9 | 953 |
| 3411 | MACYRIL BARABONA | 0600--1430---10 | 3380 |
| ??? | GARY BURKLE | 0600--1430---11 | 953 |
| 3411 | DANA POHL | 0600--1430---13 | 1183 |

| first flight | MURPHY LOWMAN (OT) | 0530--1400 | last fight |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| 987 | C KOSLOSKY / M PARK | 0600--1430---23 | 1405 |
| 435 | DON GRAY | 0600--1430---28 | 1028 |
| 435 | K CAMPBELL (also 1797) | 0600--1430---30 | 1197 |
| 407 | RON MARTIN | 0600--1430---31 | 3185 |

| first flight | SANDRA LEAMAN | 0700--1530 | last fight |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| 1289 | BETH HALTER | 0600--1430---14 | 3325 |
| 991 | ERIC HAYES | 0530--1030---15 | |
| 991 | DIANNA LEMMON | 0530--1030---16 | |

| first flight | SHEIDA HUKMAN | 0700--1530 | last fight |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| 153 | KTRN WILKERSON (OT) | 0600--1430---25 | 3159 |
| 255 | T KING (also 977) | 0600--1430---27 | 1405 |
| 153 | DEBORAH MILWARD | 0530--1030---29 | |

| | AGENT NAME | 0430--1000 | |
|---|---|---|---|
| F | | | F |
| F | MAUREEN PARK | 1420-1885-1716 | O |
| L | ALBERT MELNICK | 1812-3362-1991 | L |
| I | LATOYA GARNER | 657--1153 | L |
| G | DEBORAH PACE | 435--3341 | O |
| H | TRACEY HALL-JONES | 987--1023 | W |
| T | | | E |
| | | | R |

| | AGENT NAME | 0530--1030 | |
|---|---|---|---|
| | | | F |
| F | MARIA KELKENBERG | 1593-987-1937 | O |
| L | MICHELLE MCHUGH | 1593-991-1151 | L |
| I | MAUREEN RACHKO | 1593-407-1419 | L |
| G | TIANA THOMPSON | 1633-1881-1161 | O |
| H | JULIA SPENCER | ...2 | W |
| T | | ...59 | E |
| | | | R |

Exhibit (16)  P(1)

FAA Complaint (violation)
Ms. hukman was a css

## PHL STATION
## EMPLOYEE STATEMENT

Date of Incident: July 25 12    Witnesses: _____
_____
_____

Flight number: _____
Gate: Zone 8

Details of Incident/Situation:
There was various weight restricted flight in my zone and during the week - the agents claiming that the crew the jumpseaters flight attendant & pilots doesn't counts. when we get a weight restriction CLP informes us 150 passengers including all riders means jumpseaters.
Please advise the agents about weight restrictions policy -

Also some of the agents they list the adults as a child when child count is needed on weight restricted flight. We need the policy on weight restriction.

Thank you.

Exhibit (16) P(2)

FAA Complaint (Violation)
Ms. Hukman was a CSS

Employee Name (please print) Sheida Hukman

Signature Sheida Hukman

Employee # 2B1032

Date July 25 2012

# THURSDAY    NOVEMBER 15, 2012

| first | JOHNNY FISCHMANN | 0430--1300 | last |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| | | | |
| 3239 | SZEMAN CHAN | 0600--1430---1 | 1094 |
| 3147 | KATHY HALLY | 0600--1430---2 | 1463 |
| 1881 | N GRAY (also 1839) | 0600--1430---3 | 1847 |
| 1633 | DONALD FULKERSIN | 0430--1000---4 | |
| | | | |
| | | | |

| first | SHEIDA HUKMAN (OT) | 0630--1330 | last |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| | | | |
| 1612 | IRENE MORRIS | 0600--1400---17 | 3123 |
| 82 | ANA SERNA (OT) | 0600--1430---18 | 1994 |
| 1112 | SULAINE SHADBOLT | 0600--1430---20 | 1994 |
| 1267 | MARTIN HOWLETT | 0600--1430---22 | 1827 |
| | | | |
| | | | |

| first | TERI WILLIAMS | 0530--1400 | last |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| | | | |
| 3365 | TRACEY HALL-JONES | 0430--1000---5 | |
| 1881 | E TREMPER (also 3137) | 0600--1430---6 | 1094 |
| 657 | BRUCE DARLING | 0600--1430---7 | 3218 |
| 1885 | COLLEEN KOSLOSKY | 0600--1430---8 | 3267 |
| | | | |
| | | | |

| first | MELODY COUNCIL | 0530--1330 | last |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| | | | |
| 1267 | MICHAEL VALDEZ | 0600--1430---19 | 1634 |
| 1112 | RACHEL GREGITIS | 0600--1430---21 | 3185 |
| 434 | CINDY MASSARO | 0600--1430---24 | 1183 |
| 82 | RONALD MARTIN | 0600--1430---26 | 3263 |
| | | | |
| | | | |

| first | WALLY BOHL | 0530--1400 | last |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| | | | |
| 657 | MARK STEPHAN | 0600--1430---9 | 1197 |
| 987 | STEVE RANDALL | 0600--1430---10 | 3274 |
| 987 | D POHL (also 3105) | 0600--1430--11 | 1197 |
| 1199 | CHARLENE MOORE | 0600--1430--13 | 1405 |
| | | | |
| | | | |

| first | RAQUEL MORRELL (OT) | 0530--1400 | last |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| | | | |
| 987 | BILL ROHRER | 0600--1430---23 | 953 |
| | CODYANN RICHARDS (OT) | 0700--1430---28 | 1028 |
| 434 | T STEVENSON (also 981) | 0600--1430---30 | 3287 |
| 407 | LAKEIFA RANDALL | 0430--1000---31 | |
| | | | |
| | | | |

| first | TYRA LYNCH | 0700--1530 | last |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| | | | |
| 1289 | KELLY CAMPBELL | 0600--1430---14 | 3207 |
| 1612 | FARID BADRI | 0530--1200---15 | |
| 1289 | IVANKA HRYCKOWIAN | 0430--1000---16 | |
| | | | |
| | | | |

| first | VALERIE FLORES | 0700--1530 | last |
|---|---|---|---|
| flight | AGENT NAME | WORK HOURS | fight |
| | | | |
| 153 | ROSE RAIKES (OT) | 0430--1400---25 | 970 |
| 481 | K ROBINSON (also 1839) | 0600--1430---27 | 1028 |
| 407 | D WEIR ( also 1241) | 0600--1430---29 | 953 |
| | | | |
| | | | |

| | AGENT NAME | 0430--1000 | |
|---|---|---|---|
| | | | F |
| F | ERIC HAYES | 1593-481-1991 | O |
| L | ALBERTO POBLANO | 1716-1239-1827 | L |
| I | TOM KING | 1821-1804-1463 | L |
| G | KIONA GIBBS | 1424-1776-1634 | O |
| H | MONICA THOMAS | 1199-1189-1405 | W |
| T | | | E |
| | | | R |

| | AGENT NAME | 0530--1200 | |
|---|---|---|---|
| | MICHELLE MCHUGH | 1633-1157-1797 | F |
| F | TONI-ANN GARRICK | 253-1151-1273 | O |
| | MAUREEN BABB | 253 1555-1797 | L |
| | | 419-1585 | L |
| | | 161-1731 | O |
| | | 189-1467 | W |
| | | 67-1731 | E |
| | | | R |

Exhibit (17)
Ms. hukman worked overtime
as a css got paid as a csa

## D-0 Time Line

*Exhibit (18) P(1)*
*On time Performance timeline*

April 14, 2010

**Overview**      A- 5 *(Arrival within 5 mins.)*          At Boarding
               A-0 *(At Arrival)*                        D-20 *(Departure in 20 mins.)*
               D-45/D-60 *(International)*                D-15 *(Departure in 15 mins.)*
               *(45/60 mins. prior to Departure)*        D-10 *(Departure in 10 mins.)*
               10 Mins. prior to Boarding                D-6 *(Departure in 6 mins.)*
               5 Mins. prior to Boarding                 D-5 *(Departure in 5 mins.)*
               Boarding Times                            D-4 *(Departure in 4 mins.)*

**Duties**      **The following is the ON TIME Performance timeline/Sequence of Events:**

**A-5 *(Arrival within 5 mins.)***

- Verify Flifo for flight arrival status and compute minimum object ground time.
- Pre-Plan for inbound customers requiring assistance.
- Pre-Position Passenger Boarding Bridge for specific aircraft type.
- Stand in Passenger Boarding Bridge and wait until aircraft arrives.

**A-0 *(At Arrival)***

- Safely drive Passenger Boarding Bridge to aircraft, activate the auto-leveler and extend the overhead canopy to its fullest position.
- Knock on the door and look for thumbs-up hand signal from the F/A.
- Deliver security checklist *(If applicable)*.
- Collect International documentation *(If applicable)*.
- Communicate with F/A the arrangements for passengers requiring assistance.

**D-45 / D-60 *(International)* *(45 / 60 mins. prior to Departure)***

- Sine-in and Open flight
- Check Flifo and monitor inbound connections.
- Check outbound connects.
- Check PBTs and Plan totals *(If needed - Solicit Volunteers)*
- Print Flight Release paperwork and verify Crew.
- Print "THRU" list and verify which "THRUs" remained on board aircraft.
- Print Preliminary F/A paperwork and complete F/A Pre-Board Brief *(or on arrival of crew at the aircraft)*
- Display and work the ETOS (E-Tickets Out of Sync) list.
- Display UNAP list on International flights.
- If Revenue passenger plus Non-Rev count is less than aircraft capacity, start to clear standbys.
- Make International Document Check announcement *(If applicable)*.

Exhibit (18) P(2)
On time Performance timeline

### 10 Mins. prior to Boarding

- Make Meal Service Announcement *(If applicable).*
- Make Carry-On Baggage Announcement
- Visually scan the gate area looking for items th at should be tagged with a Gate Valet or Gate Check tag.

### 5 Mins. prior to Boarding

- Make Pre-Board Announcement
- Pre-stage passengers needing assistance or early boarding.

### Boarding Times

**Flights Operated by BOS/CLT/DCA/PHL based Crews (#700-2199)**

- *Domestic Departures (Including Canada & Bahamas)*
  - *E190/A319/A320/B737 = 30 mins. prior to scheduled departure*
  - *A321/A330/B757/B767 = 35 mins. prior to scheduled departure*
- *International Departures (Including Hawaii)*
  - *All aircraft types = 45 mins. prior to scheduled departure*

**Flights Operated by PHX based Crews (#1-699)**

- *Domestic Departures (Including Canada & Mexico)*
  - *A319/A320/B737 when PBTs are less than capacity = 30 mins. prior to scheduled departure*
  - *A319/A320/B737 when PBT is at capacity or higher = 35 mins. prior to scheduled departure*
  - *B757/A321 = 35 mins. prior to scheduled departure*
- *International Departure (Including Hawaii)*
  - *All aircraft types = 45 mins. prior to scheduled departure*

### At Boarding

- Begin Pre-Boarding
- Ensure compliance with Carry-On baggage
- Begin reconciling (PRSing) flight
- Board First Class/Envoy
- Start General boarding by zones
- Collect I-94 forms for Non-U.S. citizens and return to CBP within 24 hrs. *(If applicable).*

### D-20 *(Departure in 20 mins.)*

- Restrict flight

- Check inbound connects *(If applicable)*.
- Release Held seats
- Clear standbys, jump-seats and oversells *(If applicable)*.
- Check UNAP on International flights

Exhibit (18) P(3)
On time Performance timeline

### D-15 *(Departure in 15 mins.)*

- Final Boarding Announcement
- Process Oversells (If applicable)
- Print F/A Final Report
- Verify the close-out count is within +/- 9 of plan count (Including THRUs); if not call CLP to change plan count
- Communicate to Ramp personnel standby tag numbers that may be loaded for weight restricted and international flights. Also provide the UNREC list for International Positive Bag Match

### D-10 *(Departure in 10 mins.)*

- Close Passenger Boarding Bridge entry door (unless advised to hold for connections)
- Give Final Report to F/A and advise that all passengers have been boarded
- Verify Captain has received a fuel slip
- Verify Captain has received a Dangerous Goods Notification *(If applicable)* and retain in station 90 day file
- Advise Captain final passenger count and infants onboard
- Verify no GSI *(Ground Security Incident)*
- Ask Captain "Are you ready to depart?"
- Verify with F/A that all baggage is stowed and overhead bins are closed and emergency exit row briefing has been completed

### D-6 *(Departure in 6 mins.)*

- Verify Passenger Boarding Bridge bags are retrieved
- Prepare to assist F/A in closing aircraft door

### D-5 *(Departure in 5 mins.)*

- Close all doors

### D-4 *(Departure in 4 mins.)*

- Remove Passenger Boarding Bridge from aircraft
- Send final passenger count to CLP

# U·S AIRWAYS

### Employee Contact Report

Employee Name:  **Sheida Hukman**

Date:  **11/29/2012**

Employee ID:  **171597**

Manager:  **Eric Staples**

| Check one | Attendance | Check one | Performance |
|---|---|---|---|
|  | Coaching Discussion |  | Verbal Coaching Discussion |
|  | Level 1 | **X** | Level 1 |
|  | Level 2 |  | Level 2 |
|  | Level 3 |  | Level 3 |

**Purpose:**

On Thursday, 15 November, you were the acting CSS assigned to Unit 4.  At approximately 1305, you went to gate C17 to assist the Agent working Republic flight 3123 to PIT.  During the process of clearing the Stand-by List, you awarded an available seat to a Mainline employee traveling on an SA1 vacation pass.  In doing so, you bypassed a Republic Flight Attendant, an SA5 boarding priority, who recognized the mistake and made herself known to you, advising that she was supposed to have been boarded ahead of the Mainline SA1.

Company policy stipulates that, in this scenario, the priority for boarding goes to the Republic Flight Attendant, since the employee is traveling on his or her own company-operated aircraft.  (*See next page, under "NOTES"*)

Additionally, during this incident you engaged in a verbal altercation with the Pilot-in-Command when he attempted to advise you of the boarding-priority error.  By your own admission, you were argumentative and refused to remove the SA1 and award the seat to the Republic Flight Attendant.  The conduct you displayed, both in your initial interaction with the pilot and in the subsequent verbal dispute, represents behavior that is unprofessional and exhibits lack of sound judgment.

You are being placed on a Level 1 for failing to follow company policy and procedure and for unprofessional conduct in the presence of passengers and other employees.

Exhibit(19) P(1)
employee contact report
(not signed by Ms. Hukman)

**Employee Responsibilities:**

Boarding Priorities Non-Revenue and Baggage Fees

November 28, 2011

Gates

| SA1P | SA2P | SA3P | SA4P | SA5P |
|------|------|------|------|------|

The following describes the space available boarding priorities.

- Unaccompanied family members of retired employees.
- US Express non-wholly owned active or retired employees flying on a US mainline flight.
- Guest pass rider accompanied by the US Express non-wholly owned active employee
- Unaccompanied family members of employees on leave/furlough.
- Click here for current baggage fees

Boarding Method: Boarding by date of hire (year/month/day), then check-in time.

**NOTES:**

1. Non Wholly Owned Express employees and accompanying family members traveling on their own company -operated aircraft will be boarded first (before SA1P), prior to any mainline or other Express employee and family , regardless of boarding priority level.
    - *Example: A Republic employee traveling on a Republic -operated aircraft will be boarded before any US Airways mainline or any other Express company employees.*

**Employee Responsibilities:**

**11.1 UNIFORM AND APPEARANCE GUIDELINES**
04-01-11

As a uniformed front-line US Airways employee, you have the power to affect our customers' impressions of US Airways. You create a deep and lasting impression on our customers. Your behavior, appearance, and professionalism send clear messages to our customers about how you feel about yourself, your responsibilities, and your company. Your appearance projects the standards of excellence that US Airways Customer Service Representatives set as an employee group and as an airline. In turn, our customers form impressions about the company from you – impressions of reliability, consistency, and proficiency. Any questions regarding this chapter should be directed to Customer Service Policies and Procedures via the Ask Customer Services feedback venues or your Manager.

C. Behavior
The US Airways image must not only be clearly reflected in your appearance but also in what you say and do. Research shows that customers want uniformed employees to be truly engaged with them, to look at them, and to talk to them. Even actions that may seem insignificant can shape an opinion. Your actions and behavior must reflect the highest standards of professionalism.

- Consider your behavior in terms of how others might see it. Avoid small talk, disputes, personal opinions, reproaches, controversial discussions and company business conversations in person and/or on cell phones in or around public areas.
- Avoid loud conversations of any kind. Be aware that customers could misinterpret what you are saying.

*[handwritten: Exhibit (19) Pt 2) Employee Contact report not signed by Ms. hukman]*

Exhibit-8-

**Manager Assistance:**

If you need assistance understanding your responsibilities, please do not hesitate to contact your Supervisor & Manager for assistance. Also, please be aware that the Employee Assistance Program (EAP) is available for all US Airways employees and they can be reached at (800) 363-7190 or www.liveandworkwell.com

**Employee comments:** (attach additional pages if necessary)

---
---
---
---
---
---
---
---

**Meeting Participants:**

| | |
|---|---|
| *refused to sign* | 12 / 02 / 2012 |
| Employee Signature | Date |
| *[signature]* | 12 / 02 / 2012 |
| Manager Signature | Date |
| *[signature]* | 12 / 02 / 2012 |
| Manager Signature | Date |
| Nicole Blanchard | 12 / 02 / 2012 |
| Witness Signature | Date |

**Manager's Comments:**

---
---

cc:   Employee Personnel File
      Union Representative

Exhibit (19) P(3)
employee contact report
not signed by Ms. hukman

Exhibit (20)
CSA grievance on Nov 15, 2012 incident.

| OFFICIAL PASSENGER SERVICE GRIEVANCE FORM | # WG0012-01 | YEAR: 2012 |
|---|---|---|

| EMPLOYEE NAME Sheida Huckman | EMPLOYEE NO. 171597 | CLASSIFICATION CSA | LOCATION PHL |
|---|---|---|---|

**STATEMENT OF GRIEVANCE:**

DATE GRIEVANCE EVENT OCCURRED: 12/2/12    DATE FILED: 12/7/12

DATE RECEIVED BY MGMT: 12-7-2012    MANAGER'S NAME: Jeff Colebank

On 12/2/12 Sheida was placed on an Performance ECR by Senior Customer Service Manager Eric Staples for failing to comply with the Republic Non Rev aircraft policy. As per Article 3:H of our CBA and any other applicable articles we feel that Sheida has been unjustly disciplined. As per Article 25:C we would like to meet to discuss this issue. As a remedy we would like this ECR removed from Sheida's file and she be made whole in every way.

I authorize the **Airline Passenger Service Employee Association IBT + CWA** to examine my employee files relevant to this grievance.

SIGNATURE (EMPLOYEE): Sheida Huckman

STEWARD (PRINT): **Walter H Garrett Jr**

**STEP ONE DECISION:**    DATE ISSUED BY MGMT    DATE RECEIVED BY APSEA

SIGNATURE (MGMT REPRESENTATIVE):    SIGNATURE (APSEA REPRESENTATIVE):

STEP ONE: APPEALED ☐
ACCEPTED ☐    DATE FILED BY APSEA    DATE RECEIVED BY MGMT

**STEP TWO DECISION:**    DATE ISSUED BY MGMT    DATE RECEIVED BY APSEA

SIGNATURE (MGMT REPRESENTATIVE):    SIGNATURE (APSEA REPRESENTATIVE):

STEP TWO: APPEALED ☐
ACCEPTED ☐    DATE FILED BY APSEA    DATE RECEIVED BY MGMT

**STEP THREE DECISION:**    DATE ISSUED BY MGMT    DATE RECEIVED BY APSEA

SIGNATURE (MGMT REPRESENTATIVE):    SIGNATURE (APSEA REPRESENTATIVE):

AT EACH STEP PROVIDE A COPY TO MANAGEMENT, THE GRIEVANT, AND TO APSEA.

*overtime room awarded me an overtime*
*Sam( supervisor) refused that I work at the TKT counter*
*Eric Staples was at the TKT counter.*

## November 26, 2012    Monday    Preliminary

| POSITION | AGENTS | | BREAKS | SHIFT | CHECK-IN |
|---|---|---|---|---|---|
| KIOSK 3-4 | Roper/Deb | KIOSK ASSIST | 1130/1330/1530 | 1000/1830 | |
| KIOSK 5-6 | Powers/Jennifer | | 1200/1400/1600 | 1000/2030 | |
| KIOSK 7-8 | Saxena/Yolanda | | 1430/1630/1830 | 1200/2030 | |
| KIOSK 9-10 | Lomax/Danielle | | 1445/1645/1845 | 1200/2030 | |
| KIOSK 11-12 | Brown/Kim | Open Time bid @ 1100 | 1300/1500/1700 | 1000/1830 | |
| KIOSK 13-14 | SmithHarris/A. | | 1700/1900/2030 | 1415/2245 | |
| KIOSK 15-16 | Hukman/Sheida | | 1730/1930/2045 | 1415/2245 | |
| POSITION | AGENTS | MILITARY/GROUP | BREAKS | SHIFT | CHECK-IN |
| KIOSK 21-22 | Hill/Donna | KIOSK ASSIST | 1145/1345/1545 | 1000/1630 | |
| KIOSK 23-24 | Spencer/Joanna | | 1215/1415/1615 | 1000/1830 | |
| KIOSK 25-26 | Lopez/Mary | | 1245/1445/1645 | 1200/2030 | |
| POSITIONS 27-28 | | SPEC. ASSIST/Kioski | 1230/1430/1630 | 1000/1830 | |
| POSITIONS 27-28 | Baynham/Stella | SPEC. ASSIST/TKT | 1200/1400/1600 | 1000/1830 | |
| TKT 33 | Braxton/Basile | Braxton Til1530 | 1130/1330/1530 | 1000/1830 | |
| TKT 34 | | | | 1200/2030 | |
| TKT 35 | Brantley/Kalilah | | 1330/1530/1730 | 1000/1830 | |
| TKT 36 | Dean/sharoon | | 1700/1900/2030 | 1415/2245 | |
| TKT 37 | | | 1230/1430/1630 | 1000/1830 | |
| TKT 38 | WhiteJr/Rober. | RESOLUTIONIST/CASH | 1730/1930/2045 | 1415/2245 | |
| TKT 41-44 | | CORPORATE/KIOSK | | | |
| F/C KIOSK 59-62 | Fishetti/Helen | KIOSK ASSIST | 1130/1330/1530 | 1000/1830 | |
| F/C KIOSK 59-62 | Dean/sharoon | 1130-1415 Ext | 1200/1400/1600 | 1000/1830 | |
| F/C TKT 64 | Putman/Juanita | | | | |
| F/C TKT 65 | Bonner/Joanna | | | | |
| F/C TKT 66 | | | | | |
| EMPLOYEE/ F/C TKTNG | | | | | |
| CAR POSITIONS | CARS | | | 1000/1830 | |
| CAR L1 QUE | Brown/Michelle | | 1200/1400/1600 | 1000/1830 | |
| CAR L1 ASSIST | Dabbas/Shawn | | 1730 | 1400/2000 | |
| CAR L 2 ASSIST | McNeal/Kori | | 1230/1430/1630 | 1000/1830 | |
| CAR L2 QUE | Brown/Jazmyne | | 1200/1400/1615 | 1000/1830 | |
| CAR L4 QUE BACK | Lambert/Danielle | | 1130/1330/1530 | 1000/1830 | |
| CAR L4 QUE FRONT | Key/Jackie | | 1200/1400/1600 | 1000/1830 | |
| CAR L7 QUE | Ware/Pat | | | 1000/1830 | |
| CAR L6 QUE | Tumolo/Mensah | Tumolo Til 1400 | | | |
| CURBSIDE | FULL-TIME 1130-2000 | BREAKS | P/T 1300-1930 | | |
| CURB 1 | | | Williams/Sakia | | |
| CURB 2 | | | Schrouder/Carla | | |

*Exhibit (21)*
*CSS Sam refused that*
*Ms. hukman works overtime*

| SPECIAL SERVICES | BCON AGENTS | SHIFT | CCON AGENTS | SHIFT | |
|---|---|---|---|---|---|
| | Lemon/Mary | 945/1815 | Cameron/Anth | 945/1815 | |
| | Nedd/Val | 945/1815 | Dunlap/Jadine | 945/1815 | |
| | Palmer/Toni | 945/1815 | Robbins/Leon | 945/1815 | |
| | Norville/Star | 1030/1815 | Wilkersin/Katrina | 945/1815 | |
| | Scheer/Owen | 945/1815 | Barksdale/Chris | 1730/2330 | |
| | Manker/salathia | 1730/2330 | Brinker/Kelly | 1730/2330 | |
| | McGhie/Toni | 1730/2330 | Burkett/Lucreta | 1730/2330 | |
| | Richardson/Erica | 1730/2330 | Coleman/Cierra | 1730/2330 | |
| | Roberts/Dalia | 1730/2330 | Cook/Eva | 1730/2330 | |
| | Sadler/Shante | 1730/2330 | Walcott/Yuvonka | 1730/2330 | |
| CSS | Maddela/Sam | 1200/2030 | Brown/Jessica | 1400/2230 | |

US Airways employees fight in Philadelphia - YouTube
Page 1 of 2



Exhibit(22)
US Airways employee fist
Fight in Philadelphia


Flight 1549 'Hudson River Plane Crash'
by Air Crash Investigation
363,579 views


Disabled Veteran Kicked Off U.S. Airways Flight
by wtperry
194,722 views


Last US Airways 767-200 Flight Before Retirement (Full Flight)
by Jordan Skok
4,040 views


CCTV Of US Airways 1549 Con Edison Security Camera
by AIRBOYD
979,448 views


A fight breaks out between customers and staff at Burger King because the
by Tony C
381,210 views


Removed from plane for not doing nuffin
by oakwoodNS
2,506 views


US Airways Flight 1549 Full Cockpit Recording
by mnaba11
1,616,047 views

**US Airways employees fight in Philadelphia**

Petr Marecek

Subscribe  0

547 views

Add to    Share    More                    4      1

Share    Embed    Email

http://youtu.be/NzOB97U1ePk

☐ Start at:  0:14

**Published on Feb 28, 2014**
Us Airways has to be one of the most horrible companies ever! Spending 3 days at the airport due to "technical difficulties", we have witnessed the rudest customer service, lies, ignorance, utter incompetence -- and the staff fighting right in front of the customers!

SHOW MORE

**ALL COMMENTS (4)**

Share your thoughts

Top comments ▾


Jonathan Sutton  1 month ago
Yea, notice neither of them have lime green vests or the blue uniform on... City workers...
Reply  ·


eva c  3 weeks ago
They are not USAirways employees.  You may want to correct your header - they are employed by the City of Philadelphia.
Reply  ·


Angelica Cooke  1 month ago
They are cleaners for the city of Philly not usairways
Reply  ·


Petr Marecek  Shared on Google+  1 month ago
Reply  ·  5


HE ASKED FOR IT CUSTOMER STARTS A FIGHT WITH CHINESE
by Crystal Renay
6,574 views


US Airways Flight 1549 Emergency landing on the Hudson [Original ATC]
by fliegenderMRX1
243,688 views


Air China ground staff in physical fight with passengers
by brascoTabo
115,702 views


US Airways Crash Video Flight 1549 - Coast Guard Video
by AIRBOYD
1,752,203 views


US Airways emergency landing hudson river (water) part 1
by nanisman55
2,572,057 views


[HD] Spotting at Daytona the Day After the Daytona 500
by DABspotting
288 views

Police Forcibly Remove Disruptive, Fighting Woman from Spirit Airlines
by estnetrod
1,593,405 views

'Plane In The Vagina' Picture Lands US Airways In Deep Trouble
by The Young Turks
100,984 views

US Airways a320:Boarding, Pushback, taxi in Phoenix

**U·S AIRWAYS**

December 4, 2015

*Via E-mail and First Class Mail*
Sheida Hukman
4200 S Paradise Rd
#3011
Las Vegas, NV 89169

Exhibit (23)
AA Airlines letter to
Ms. Hukman

Dear Ms. Hukman,

I am writing with respect to the status of your employment.

By letter dated December 10, 2012, the company informed you that you were required to submit to an independent medical examination in accordance with Article 16 of the collective bargaining agreement entered into between the company and your union ("CBA"). The independent medical examiner determined that you could not safely and effectively perform the essential functions of a customer service agent. You were therefore placed on an unpaid leave of absence effective December 11, 2012.

The independent medical examiner set forth a treatment plan that you were required to complete before you would be eligible to return to work. You have not informed the company that you completed that treatment plan or provided any documentation showing that you completed that plan.

The CBA provides that if you remain on a medical leave status in excess of three years, you will be deemed to have resigned your position and removed from the seniority roster. You will have been on a medical leave for three years effective December 11, 2015, and there is no indication that you have fulfilled the requirements set forth in the independent medical examiner's report. Failure to provide documentation by December 11, 2015 showing that you have fulfilled all of the requirements set forth in the independent examiner's report will result in you being deemed to have resigned from US Airways, Inc. effective December 11, 2015.

If you are deemed to have resigned from US Airways, you will be offered 18 months of COBRA for medical and/or dental, if you had continued coverage and if you were still carrying the group Life Insurance, you may elect to convert to a private policy.  Please contact Benefits US at 888-860-6178 to request information on either COBRA or conversion of life insurance.

If you believe you meet the requirements for Retirement under the 55/5 Retirement program (age > 55 with 5+ years of credited service) or 65 Point Plan (age + years of service with a minimum of 10 years of service = 65 or more), you must submit the appropriate form prior to the expiration of your leave of absence. These forms can be found on the Retirement page of Wings or by contacting the US Airways Benefits Center (888-860-6178).  All travel privileges are subject to the Company's non-revenue pass travel policies which are now in effect and may be, from time to time, amended.

Thank you for your service to US Airways. If you have any questions or concerns about this letter, please contact me at 817-963-4581.

Sincerely,

Robert Weston
Manager, Labor Relations

CC:    Station Resources
       Labor Relations – File
       Robert Yori

# KAREN L. CRUEY, M. D.
## PSYCHIATRIC MEDICINE

Specialist in
* Child, Adolescent &
* Adult Psychiatry
* Psychotherapy
* Court-Ordered Assessments
Independent Medical Evaluations

2340 Paseo del Prado
Suite Q207
Las Vegas, NV 89102
702-247-1703
Fax 247-4082
Administrative cellular (702) 219-4584

*Independent Medical Evaluation (IME)*

January 18, 2013

Re:    **Sheida Hukman**
Age: 50 years (minus 3 days)
DOB: 01/21/1963

*Exhibit (24) P(1)*
*Dr. Cruey Report*

Attention:    Kelly Barrett, US Airways

**Reason for Evaluation:**
Request by Ms. Kelly Barrett with US Airways to determine fitness for duty of Ms. Sheida Hukman in her position as a Customer Service Agent for US Airways

**Sources of Information:**
1. Letter from Exam Works on behalf of US Airways stating the purpose of the Independent Medical Evaluation and requesting the medical opinion of the undersigned on a series of five (5) questions following records review and examination of Ms. Hukman, dated 01/16/2013. The responses to the questions appear in the Independent Medical Evaluation report.
2. Medical and Lifestyle History (MLH) questionnaire completed by Ms. Hukman and brought to the interview on 01/18/2013
3. Records submitted by US Airways for review

**Identifying Information:**
Ms. Hukman arrived at the interview 45 minutes after the designated start time, allowing one (1) hour 15 minutes for the evaluation interview with the undersigned instead of the previously planned two (2) full hours. For identification at the time of the interview, she provided her New York State driver's license, issued on 01/18/2005 with an expiration date of 01/21/2013.

**Discussion of need to disclose content of interview in a report:**
At the beginning of the interview, I informed Ms. Hukman that unlike the usual interview with a physician, in this case I would need to describe the topics that she and I discussed in a report, an Independent Medical Evaluation. She agreed and stated that she understood.

Exhibit (24) P(2)
Dr. Cruey's Report

Re: Sheida Hukman, DOB 01/21/1963
Independent Medical Evaluation, 01/18/2013
Karen L. Cruey, M.D.

2

## Organization of this IME

Because of the considerable volume of records provided for review, to make use of this report easier for the reader, the components have received organization into the following Appendix listings, with the body of the report consisting of a summary of findings:

| Appendix | Content of Appendix | Page No. |
|----------|---------------------|----------|
| Appendix A: | Review of documentation provided by US Airways Including materials written by Sheida Hukman | 5 |
| Appendix B: | Review of materials provided by US Airways regarding Sheida Hukman labeled Exhibit B: "Irrational Behavior/Complaints" | 20 |
| Appendix C: | Review of materials provided by US Airways Regarding Sheida Hukman labeled Exhibit C: "History of Similar Behavioral Traits" | 23 |
| Appendix D: | Psychiatric Evaluation based on interview of 1 hour 15 minutes plus records review | 26 |
| | *"Formulation" of psychiatric evaluation, conclusions including Summary of Findings* | 35 |
| Appendix E: | DSM-IV-TR diagnostic criteria for some of the findings from current IME | 39 |

*Medical opinion with respect to the following questions asked by US Airways:*

1. *What is the nature and extent of Ms. Hukman's current function or mental impairment, if any?* The "Formulation" section of the Psychiatric Evaluation component of this Independent Medical Evaluation contains an extensive discussion of that topic. Ms. Hukman has had time to rest and may have had the ability to recuperate more intact functioning then she demonstrated during her final days on duty in the workplace.

2. *Has appropriate treatment been recommended to Ms. Hukman?* In spite of line-by-line scrutiny as the provided records, only at one time did recommendation for mental health treatment emerge from her workplace, in a suggestion that she avail herself of the Employee

Exhibit(24) P(3)
Dr. Cruey's Report

Re: Shelda Hukman, DOB 01/21/1963
Independent Medical Evaluation, 01/18/2013
Karen L. Cruey, M.D.

3

Assistance Program services and obtain some counseling in December 2007 when placed on unpaid leave of absence after the negative incident in the Charlotte airport with the US Airways staff members there. Ms. Hukman has never had a formal medical recommendation for treatment.

3. *Has she been compliant with the treatment recommendations?*
Since the recommendation to use Employee Assistance Program services for counseling in 2007 did not constitute a medical recommendation, her lack of compliance with that suggestion or recommendation does not represent lack of compliance with a medical recommendation.

4. *Based on your knowledge of her condition(s), please provide your opinion of whether she can effectively and safely perform the essential functions of a Customer Service Agent.* If Ms. Hukman will attend regular individual psychotherapy sessions for a period of time with an experienced psychologist with knowledge of her culture and language, such as Richard H. Pratt, Ph.D., in Las Vegas, NV, who speaks Arabic and who provides current psychotherapy treatment to patients in Las Vegas in the Arabic language, it seems likely to capacitate her to overcome the difficulties that she has experienced in the workplace. She will need to agree to accept treatment through psychotherapy. Dr. Pratt will need to administer a battery of psychological testing to Ms. Hukman. Following his assessment, Dr. Pratt will have a greater ability to understand Ms. Hukman's need for treatment through psychotherapy, and will have ability to estimate the frequency of treatment sessions for her in the setting of a recommended time frame. In the professional opinion of the undersigned, this intervention will provide the best and most comfortable treatment for Ms. Hukman, with likelihood for enduring results that will permit Ms. Hukman to continue to make a strong, enduring contribution to her company as a multi-lingual Passenger Service Agent. I recommend this intervention begin, with the testing battery and at least the initiation of psychotherapy sessions for a period of time before she returns to the workplace.

5. *If it is your opinion that Ms. Hukman cannot currently perform her job requirements, please provide any treatment recommendations and timeframe anticipated for her to reach MMI.* Please refer to the response to Question #4 above. As an additional consideration, it might provide a useful guideline and diminish conflict for Ms. Hukman to restrict her from spontaneously assisting other passenger service agents in process of boarding their flights. Possibly a majority of the complaints described in the documentation provided for this IME, with a time span from 2007

Exhibit (24) f(4)
Dr. Cruey's Report

Re: Sheida Hukman, DOB 01/21/1963
Independent Medical Evaluation, 01/18/2013
Karen L. Cruey, M.D.

4

through 2012, have pertained to Ms. Hukman's having decided that
she would "help" another customer service agent, where in fact she
appeared to decide to take charge and usurp the other employee's
authority, with invariable resentment and conflict resulting.
Although Ms. Hukman reported that she goes for an annual physical
examination, it will benefit her to have a current, thorough physical
examination by an experienced internist or other equivalent
specialist to include comprehensive laboratory and other testing,
including a Comprehensive Metabolic Panel, Lipid Panel, complete
blood count with differential, three-hour glucose tolerance test to
assess for hypoglycemia, B12, folate, iron, thyroid function test
levels, Vitamin D panel, estradiol, estrone, total estrogen, free
estrogen DHEA, progesterone, testosterone (free and total). Since
literally years of disabling symptoms have prevailed, creating an
uproar in the workplace for untold employees as well as customers,
the time to MMI may require many months or longer. It seems likely
that Ms. Hukman will have the ability to return to the workplace
fairly soon after beginning treatment if she can have a significant
frequency of sessions, twice a week, for the first 4 to 6 weeks of care.
It seems unlikely that Ms. Hukman would have the financial
resources for this treatment. It will benefit her to receive assistance
from her company that will actually permit therapeutic intervention
of substance. Although Ms. Hukman does not drink alcohol or use
any drugs, employee health plans typically pay for substantial drug
and alcohol treatment, which she does not require. She does require
this specialized psychotherapy treatment that seems likely to require
substantial financial costs at least on the equivalent level of the cost
of a quality drug and alcohol rehabilitation.

I appreciate the opportunity to assist with this interesting and complex
case.

Respectfully,

K. Cruey MS

Karen L. Cruey, M. D.
With Subspecialty in Psychiatric Medicine:
Child, Adolescent & Adult



# Gregory P Brown, MD, Professional Corporation

Diplomate of the American Board of Psychiatry and Neurology in Psychiatry and Forensic Psychiatry

Associate Professor of Psychiatry, University of Nevada School of Medicine

January 21, 2017

*Exhibit(25) P(1)*
*Dr. Gregory Brown Report*

Sheida Hukman
4200 South Paradise Road, #3011
Las Vegas, Nevada 89149

## INDEPENDENT PSYCHIATRIC REPORT

**RE:**                                **Sheida Hukman**
**DATE OF BIRTH:**                      01/21/1963
**DATE OF EVALUATION:**                 01/19/2017
**DATE OF DICTATION:**                  01/19/2017

**PURPOSE OF EVALUATION:** I was contacted by Ms. Hukman and asked to perform an Independent Psychiatric Evaluation of her for the purpose of determining whether or not she suffers from a psychiatric diagnosis. In addition, she requested feedback regarding the content of a previous IPE which she received from another physician.

**NOTICE OF EVALUATION STATUS:** Ms. Hukman was informed that no doctor-patient relationship was established by means of this visit and, therefore, the usual confidentiality and privilege rules did not apply over the course of this evaluation. Because she requested this report herself, the report will be generated and sent directly to her. Ms. Hukman signed written notification of the above information and consented to proceed with the interview which she, herself, requested.

**NATURE OF THE EVALUATION:**
1. Review of an information form completed by Ms. Hukman immediately prior to the evaluation on January 19, 2017.
2. Psychiatric Interview and Mental Status Examination conducted on January 19, 2017, of approximately one and a half hours' duration.
3. Review of a psychiatric evaluation conducted by Karen Cruey, M.D., dated January 18, 2013.
4. Additional documentation provided by Ms. Hukman related to employment issues at US Airways.

to airport security and with regard to the potential of altering the weight and balance of smaller aircraft

Exhibit (25) P(2)
Dr. Gregory Brown Report

**PERSONAL HISTORY AND SOCIAL HISTORY:** Ms. Hukman stated she was born in Iraq on January 21, 1963. She stated she was the middle child in a family in which she had five siblings. She noted she grew up in Spain and had "a great childhood." She stated that she and her family then moved to New York where she completed high school in the 1980s. She reported that after high school she began work in both real estate and at a travel agency and also attended college in the evenings. She noted that she completed a bachelor's degree in computer science and information and also another bachelor's degree in law. She noted both of these were completed in the 1990s and that she attended New York University to complete them. Ms. Hukman reported that she speaks five languages fluently and that she is able to learn other languages with ease.

She stated that she worked in the area of real estate and holds both a New York and Nevada license for such. She also stated she worked in a travel agency in New York while going to college. She reported that she began working for US Airways in 2007 and worked at a Las Vegas hub until 2010 when the hub was closed here. She noted that she was then offered a position at the hub in Philadelphia, which she took immediately. She stated that US Airways put her on medical leave in December 2012.

Ms. Hukman stated that she has never been married and has no children. She noted she lives alone in Las Vegas, but she does have a significant other of several years' duration.

**PAST MEDICAL HISTORY:** Ms. Hukman denied any systemic medical illness. She denied being prescribed medications for any condition. She denied allergies to medication. She denied any history of surgeries.

**SUBSTANCE USE HISTORY:** Ms. Hukman denied the use of alcohol, tobacco, or illicit substances.

**PAST PSYCHIATRIC HISTORY:** None.

**FAMILY PSYCHIATRIC HISTORY:** None known.

**PSYCHIATRIC REVIEW OF SYSTEMS:** Ms. Hukman did not endorse signs or symptoms of psychosis, signs or symptoms of mood disorder, or signs or symptoms of anxiety disorder. She reported good sleep, good appetite, stable positive mood, and no acute symptoms.

**HISTORY OF THE CURRENT SITUATION:** Ms. Hukman stated that she was placed on a medical leave in December 2012. She noted that she had become concerned at the Philadelphia US Airways hub that other agents were "doing illegal activities." She gave an example of this, "I was asked to smuggle employees onto a plane." She stated, "I had to tell management and tell the police. I felt like they were trying to smuggle things." She stated that none of this type of behavior happened when she was working at the Las Vegas hub, only at the Philadelphia hub. She described various concerns related to airport security and with regard to the potential of altering the weight and balance of smaller aircraft if additional individuals were allowed onto the plane. She noted that US Airways required her to attend an Independent Psychiatric Evaluation conducted by Dr. Karen Cruey. She stated that she did not trust Dr. Cruey's recommendation regarding a referral to a psychologist who Dr. Cruey had mentioned was fluent in Arabic. Ms. Hukman stated she did not need a psychologist fluent in Arabic and did not feel part of the Arabic culture. She noted that she was part of the Kurdish culture, which was quite different